The Lake Shore and Michigan Southern Railway Company

*v.*

Swan A. Johnsen.

*Filed at Ottawa January 22, 1891.*

1. Negligence—*signals on approaching railway crossing—degree of care in a populous city.* Where a railway company covers a public street in a populous city with a network of tracks, it must observe unusual care and take extra precautions to avoid injury to persons lawfully passing along such street. In such case, one attempting to pass along the street will have the right to believe that a train of cars will not be allowed to cross the street where he is standing, without giving him a warning by bell, or whistle, or flagman.

2. Same—*the statute construed as to signals on approaching highway crossings.* The requirements of the statute that a bell shall be rung or whistle sounded upon a locomotive on approaching a highway crossing, for the distance of eighty rods from such crossing and until the crossing is reached, applies in cases where the cars begin to move within the eighty rods, as well as to cases where the point of starting is more than eighty rods distant.

3. Same—*flagman at crossing—estoppel to deny that a flagman was required.* Where a defendant railway company asks, and the court gives at its request, instructions based upon the duty to have a flagman stationed at the place where an injury is inflicted, the company will be estopped from denying that it was its duty to have such flagman at such place, and the concession thus made will justify an instruction on the subject.

4. Same—*contributory and comparative negligence—an instruction construed.* An instruction, that if the jury believe, from the evidence, that the plaintiff was injured in the manner stated in the declaration, through the fault of the defendant's employes in negligently operating and running cars upon defendant's railroad, as alleged in the declaration, and that the plaintiff was exercising due care at the time, or if the jury believe, from the evidence, that said plaintiff was exercising ordinary care on his part, but was guilty of slight negligence contributing to such injury, and that the employes of the defendant were guilty of gross negligence contributing to such injury, but that the negligence of said plaintiff was slight and that of defendant's employes was gross when compared with each other, the plaintiff is entitled to recover, does not assume that defendant's employes were at fault in operating and running the cars, etc., and is not erroneous.

41—135 Ill.

| | |
|---|---|
| 135 | 641 |
| 137 | 288 |
| 135 | 641 |
| 141 | 625 |
| 143 | 252 |
| 135 | 641 |
| 147 | 122 |
| 135 | 641 |
| 150 | 555 |
| 151 | 237 |
| 152 | 229 |
| 154 | 432 |
| 154 | 533 |
| 44a | 462 |
| 45a | 590 |
| 135 | 641 |
| 51a | 337 |
| 51a | 631 |
| 135 | 641 |
| 157 | 675 |
| 46a | 33 |
| 46a | 260 |
| 46a | 570 |
| 48a | 626 |
| 135 | 641 |
| 53a | 77 |
| 54a | 214 |
| 54a | 308 |
| 56a | 380 |
| 57a | 311 |
| 58a | 420 |
| 135 | 641 |
| 62a | 438 |
| 135 | 641 |
| 168 | 517 |
| 70a | 85 |
| 135 | 641 |
| 72a | 392 |
| 135 | 641 |
| 74a | 397 |
| 135 | 641 |
| 78a | 530 |
| 135 | 641 |
| 82a | 108 |
| 135 | 641 |
| 190 | 6219 |
| 94a | 8458 |
| 95a | 6131 |
| 135 | 641 |
| 192 | 10 35 |
| 135 | 641 |
| 99a | 6485 |
| 135 | 641 |
| 195 | 4180 |
| 101a | 6 12 |
| 101a | 6 53 |
| 135 | 641 |
| 199 | 12 12 |
| 135 | 641 |
| 203 | 9259 |
| 203 | 7516 |
| 204 | 6264 |
| 106a | 12139 |
| 107a | 7107 |
| 135 | 641 |
| 110a | 6548 |
| 135 | 641 |
| 111a | 8251 |

41:18 LRA 217

135  641
212  374

5. In the above instruction the words, "if the jury believe, from the evidence, that the plaintiff was injured in the manner stated in the declaration, through the fault of defendant's employes, etc., as alleged in the declaration," apply as well to the second clause of the instruction as to the first.

6. The words "at the time," as used in the instruction, refer to the whole transaction or series of circumstances, from the time the plaintiff reached the tracks to the time when he was injured, and are not limited to the precise time the cars struck him.

7. SAME—*negligence as a question of law or fact.* It is a question of fact to be determined by a jury from the evidence, and not a question of law, whether an injured party has exercised ordinary care for his safety and to avoid injury.

8. A court can never be called upon to say to the jury that negligence has been established as a matter of law, unless the conduct of the injured party has been so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent. If the case is open to difference of opinion, the jury must pass upon it.

9. SAME—*measure of damages—prospective suffering, etc., in case of personal injury.* Where the proof shows that both feet of the plaintiff were injured so badly that one had to be amputated, and tends to show that the wounds on the other were liable to break out afresh at any time, and that the foot could not be used, there is no error in an instruction to the jury that in assessing the damages they might take into consideration the plaintiff's prospective suffering and loss of health.

10. PRACTICE—*directing special findings by jury.* There is no error in refusing to require the jury to find specially upon certain questions of fact, when they are substantially covered by other questions which are submitted and answered.

11. SAME—*sufficiency of answer to a special question of fact submitted.* In an action for a personal injury to the plaintiff while traveling west on a public street and while crossing a railway track, a special question submitted to the jury, whether there was a flagman at the crossing, was answered, "None visible from the east:" *Held*, that the answer was sufficient, it amounting in substance to an answer that there was none.

12. SAME—*directing what the verdict shall be.* The court should never, by instruction, withdraw a case from the jury, unless the testimony is of such a conclusive character as to compel it, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it.

13. The plaintiff, while lawfully walking westward on the sidewalk of a public street, came to the place where the defendant's tracks, eight in number, crossed the same, where he stopped on the eastern uninclosed track and looked both westward and southward. Several trains were

moving in different directions on the other tracks, and while he was looking to the west, with his face turned a little to the north, he was struck by some cars coming from the south, which had just been switched upon the track upon which he stood, and were running down grade by their own momentum, without any engine and without warning of any kind : *Held*, that the facts did not show such negligence on the plaintiff's part as to justify the court in directing a verdict for the defendant.

14. SPECIAL FINDING—*whether inconsistent with general verdict.* A special finding that a plaintiff, in attempting to cross a public street filled with railroad tracks, before he stopped and after he stopped looked to see if any cars were approaching on the track upon which he stopped, and that there was nothing to prevent him from seeing the approach of the cars which ran over him, if he had looked, is not necessarily inconsistent with a general verdict for the plaintiff, when the cars that struck him were on a different track from the one where he stood when he looked, and they were suddenly switched on to that track.

APPEAL from the Appellate Court for the First District ;—heard in that court on appeal from the Circuit Court of Cook county ; the Hon. FRANK BAKER, Judge, presiding.

This was an action on the case, in the circuit court of Cook county. The trial resulted in a verdict and judgment in favor of the plaintiff for $7500 and for costs.

The instructions referred to in the opinion of the court are as follows :

"1. The jury are instructed, that if they believe, from the evidence, that the plaintiff, Johnsen, was injured in the manner stated in the declaration, through the fault of the defendant's employes in negligently operating and running cars upon the railroad of the defendant, as alleged in the declaration, and that the plaintiff was exercising due care himself at the time, or if the jury believe, from the evidence, that said plaintiff was exercising ordinary care on his part, but was guilty of slight negligence contributing to such injury, and that the employes of the defendant were guilty of gross negligence contributing to such injury, but that the negligence of said plaintiff was slight and that of defendant's employes was gross when

compared with each other, the plaintiff is entitled to recover, and the verdict should be accordingly.

"2. The court instructs the jury, that if they believe, from the evidence, that the plaintiff, while exercising due and proper care under the circumstances, was injured by the negligence of the defendant, as charged in the declaration, then the defendant is liable to the plaintiff in damages for such injuries, and the jury will find for the plaintiff. And the court further instructs the jury, that if they find, from the evidence, that the plaintiff was exercising ordinary care on his part, but was himself guilty of some negligence, but that the defendant was guilty of gross negligence contributing to such injury, and that the plaintiff's negligence was slight as compared with the negligence of the defendant, still he may be entitled to recover.

"3. In determining the amount of damages the plaintiff is entitled to recover in this case, if any, the jury has a right to, and they should, take into consideration all the facts and circumstances in evidence before them, the nature and extent of the plaintiff's physical injuries, if any, testified about by the witnesses in this case, his loss of limb, disfigurement and physical impairment, if any, caused by such injury, if any, his pain and suffering, if any, resulting from such injuries, and also such prospective suffering and loss of health, if any, as the jury may believe, from all the evidence before them in this case, he has sustained or will sustain by reason of such injuries."

Mr. Pliny B. Smith, for the appellant:

There was no evidence tending to show any care on the part of the plaintiff, but the accident was the result of his own gross negligence.

If he did look, as claimed, then he saw the approaching cars, and either recklessly tried to pass in front of them, or else miscalculated the time he had in which to get out of their way, and stood on the track looking in another direction while he knew they were approaching. In such event he is abso-

lutely prevented from recovering. *Railway Co.* v. *Hatch,* 79 Ill. 137; *Railroad Co.* v. *Jacobs,* 63 id. 178; *Railroad Co.* v. *Manly,* 58 id. 300; *Railway Co.* v. *Bell,* 70 id. 102; *Railway Co.* v. *Jones,* 76 id. 311; *Harlan* v. *Railroad Co.* 64 Mo. 480; *Railway Co.* v. *Sunderland,* 2 Bradw. 307; *Railway Co.* v. *Kuhlman,* 18 id. 222; *Kelly* v. *U. R. and T. Co.* 11 Mo. App. 1; *Railroad Co.* v. *Nixon,* 52 Texas, 19.

When a safe course and a dangerous one are open to a person, and he chooses the dangerous one, and is thereby injured, he is guilty of such negligence as to disentitle him to an action for the injury. *Centralia* v. *Krouse,* 64 Ill. 19; *Lovenguth* v. *Bloomington,* 71 id. 238; *Railroad Co.* v. *Godfrey,* id. 500; *Railroad Co.* v. *Hetherington,* 83 id. 510; *Railway Co.* v. *Hart,* 87 id. 534; *Packet Co.* v. *Henry,* 50 id. 269; *Railroad Co.* v. *Hall,* 72 id. 222; *Railway Co.* v. *Donahue,* 75 id. 106; *Foster* v. *Railroad Co.* 84 id. 164; *Austin* v. *Railway Co.* 91 id. 35; *Abend* v. *Railroad Co.* 111 id. 202; *Railway Co.* v. *Bliss,* 6 Bradw. 411.

Where the facts are such that a reasonable mind can draw from them but one conclusion, the question of negligence is one of law; but where reasonable minds might differ, the question is one of fact. Beach on Contributory Neg. 454; Cooley on Torts, 670; *Fernandez* v. *Railway Co.* 52 Cal. 50; *Railroad Co.* v. *O'Connor,* 119 Ill. 597; *Abend* v. *Railroad Co.* 111 id. 202; *Simmons* v. *Railroad Co.* 110 id. 340.

The court erred in refusing to submit certain questions of fact and in refusing to require a correct answer to question 15.

An instruction which assumes a disputed fact is erroneous. *Railroad Co.* v. *Zang,* 10 Bradw. 597; *Clement* v. *Boone,* 5 id. 111; *Chambers* v. *People,* 105 Ill. 418.

It is error to instruct that the jury may find defendant guilty generally, without confining them to that alleged. *Railroad Co.* v. *Mock,* 72 Ill. 141; *Manufacturing Co.* v. *Ballou,* 71 id. 417.

It is error to confine plaintiff's negligence to the moment of receiving an injury. *Railroad Co.* v. *Weldon,* 52 Ill. 290;

*Railroad Co.* v. *Warner,* 108 id. 538; *Abend* v. *Railroad Co.* 111 id. 202.

Instructing to allow prospective damages was error.

Mr. John S. Miller, for the appellee:

Whenever the determination of the question involves, as it clearly does in this case, the weighing of evidence, the question is one of fact, with which this court has no concern. *Railroad Co.* v. *Hutchinson,* 120 Ill. 590; *Railroad Co.* v. *Warner,* 123 id. 45; *Railroad Co.* v. *O'Connor,* 119 id. 594.

The first instruction, as a whole, was sustained by this court in *Railroad Co.* v. *Fietsam,* 123 Ill. 522. That such instruction is not open to the objection of assuming defendant's negligence, was expressly held by this court in the case of *Railroad Co.* v. *Brown,* 123 Ill. 162, where the same counsel presented the question on behalf of his present client in a similar instruction, and in *Mullen* v. *Spangenberg,* 112 Ill. 144.

Counsel says it was gross negligence for plaintiff to stop and stand upon the track. That depends on circumstances. It was not negligence as a matter of law, without regard to the circumstances, even if done without first looking. *Railway Co.* v. *Robinson,* 127 Ill. 9; *Railroad Co.* v. *Hutchinson,* 120 id. 587; *Railroad Co.* v. *Tilton,* 26 Ill. App. 367.

Appellee had the right to suppose that the cars would be run over the crossing with the caution and care on the part of the railway company which the law requires, and with due regard to the rights of the people going on the streets. *Railroad Co.* v. *Adler,* 28 Ill. App. 102; *Railroad Co.* v. *Stables,* 62 Ill. 313; *Railroad Co.* v. *Hillmer,* 72 id. 235.

Mr. Justice Magruder delivered the opinion of the Court:

This is an action to recover damages for a personal injury. The trial below resulted in a verdict and judgment for the plaintiff, and an appeal to the Appellate Court has resulted in a judgment of affirmance.

The first error assigned is the refusal of the court to instruct the jury, at the request of the defendant, that the evidence was not sufficient to justify a verdict for the plaintiff, and that their verdict should be for the defendant. We do not think, that the facts shown by the testimony of the plaintiff conclusively established negligence, on his part, as a matter of law. The court can never be called upon to say to a jury, that negligence has been established as a matter of law, unless the conduct of the injured party has been so clearly and palpably negligent, that all reasonable minds would so pronounce it without hesitation or dissent. "Negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ." (*C. & E. I. R. R. Co.* v. *O'Connor*, 119 Ill. 586; *T. H. & I. R. R. Co.* v. *Voelker*, 129 id. 540.) Unless the negligence of the plaintiff is proven by such conclusive evidence, that there can be no difference of opinion as to its existence upon a mere statement of the facts, the jury must pass upon it. We have repeatedly held that it is a question of fact to be determined by the jury from the evidence, and not a question of law, whether an injured party has exercised ordinary care for his safety and to avoid injury. (*Pennsylvania Co.* v. *Frana*, 112 Ill. 398; *C. & I. R. R. Co.* v. *Lane*, 130 id. 116.) Nor should a cause ever be withdrawn from the jury, unless the testimony is of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it. (*C. & N. W. Ry. Co.* v. *Snyder*, 128 Ill. 655.)

In the present case, the plaintiff, in returning from his work to his home on July 18, 1887, between five and six o'clock in the afternoon, was walking westward on the north side-walk of 25th street in Chicago, when he came to the place where appellant's railroad tracks cross said street. At this point eight tracks, running north and south, cross 25th street. Plaintiff stopped on the easternmost unenclosed track, and looked westward and also southward towards 26th street.

Upon one of the western tracks a passenger train was moving south across the street; it would appear that another passenger train was moving north over another track; freight cars were moving across the street on the second track west of where he stood. While he was looking westward, with his face turned a little towards the north, some cars moving from the south across the street upon the track on which he stood, struck him from the rear, knocked him down and injured one foot so that it had to be amputated, and the other so that it was seriously disabled.

Plaintiff states, that he looked south a few seconds before he was struck and saw no cars coming from that direction towards him. This might well be true, as the cars which struck him were suddenly switched off from a track further to the west, and placed upon the track on which he was standing, and then pushed or "kicked" rapidly on said last named track towards the north across 25th street. It is said that, if he looked to the south as he said he did, he must have seen the cars which struck him. But he was obliged to look westward at the same time, in order to avoid the passenger and freight trains which were there crossing the street ahead of him. His attention may have been distracted from a careful view towards the south by the necessity of looking towards the west. The cars may have been thrown so suddenly upon the track on which he stood, and which he evidently supposed to be unoccupied, that he did not notice the movement in time to retreat. The evidence tends to show, that the grade slopes downward from the south to the north at this point; that an engine had pushed, or "kicked," the cars, which struck him, along this down grade upon the track where he stood, and then was disconnected from the cars, leaving them to move northward over 25th street by their own momentum; that, while these cars were thus moving towards him, there was not only no engine attached to them and no bell sounding, or whistle blowing, but there was no brakeman upon them in

such a position as to control them, and no flagman anywhere in sight to give warning of their approach.

The plaintiff had as much right to be upon 25th street as the railroad company had to be there with its cars. It was a public street, and its use by the company was subject to the right of the general public to use it. Plaintiff could hardly avoid standing upon one of the tracks, as the street crossing was filled and interlaced with a network of tracks. Where railroad companies thus cover a public street with a large number of tracks, they must observe unusual care and take extra precautions to avoid injury to persons passing along the street or sidewalks. Plaintiff had a right to believe, that a train of cars would not be allowed to cross the street where he was standing, without giving him warning by bell, or whistle, or flagman. He was not obliged to suppose, that the railroad company would be guilty of such reckless and gross negligence, as to suddenly transfer a number of cars upon an apparently unoccupied track, and then shove or "kick" them thereon upon a descending grade, across a public street in a crowded city, without engine, or bell, or whistle, or brakeman, or flagman, or note of warning of any kind.

It was a matter for the jury to determine, under all the facts and circumstances as thus detailed, whether or not the plaintiff was exercising due and proper care in his efforts to cross the street. The trial court committed no error in refusing to take the case from the jury.

It is claimed that the verdict is inconsistent with the special findings. The jury found specially, in answer to questions submitted by the defendant, that plaintiff stopped and stood upon the track where he was struck; that, before he so stopped, and while he so stood, he looked to see if any cars were approaching on that track; that there was nothing to prevent him from seeing the approach of the cars which ran over him, if he had looked, nor anything to obstruct the view of the track from the point where the cars started to the place where

they struck him, and that said cars could be seen by a person standing by the side of the track through the entire distance between the point from which they started, and the point where they struck the plaintiff.

The proof tends to show, that the track, on which he stood, was a switch track terminating a few feet south of the sidewalk on the south side of 25th street. If he had seen the cars, when he looked, they may have been on a track to the west, and not on the track where he stood, and, therefore, not in a position where they seemed to threaten any danger to him. The jury may have believed, what the evidence tends to show, that after he turned his look from the south to the west as above stated, the cars, which had been on another track, were suddenly switched over upon the track east of them, and shoved rapidly forward down the grade towards his position. The evident necessity of looking in two directions, and the division of attention resulting therefrom, may have affected the accuracy and clearness of his observation. Under this view of the facts, the special findings cannot be regarded as being inconsistent with the finding, involved in the verdict, that plaintiff was exercising ordinary care and caution.

It is objected, that the court refused to require the jury to find specially upon certain questions of fact. Defendant's counsel tendered twenty questions to be submitted to the jury. Of these the court submitted fourteen and refused to submit six. Counsel only complains in his brief of the refusal to submit three of the six, that is to say, the 8th, 13th and 17th. The latter questions called upon the jury to state whether the plaintiff took any precautions for his safety before stepping upon the track where he was hurt, or while standing thereon, and whether he made any effort, before stepping upon the track, to ascertain whether any cars were approaching thereon. Without considering the point made by counsel for appellee, that the facts to be found were merely evidential and not ultimate, under the doctrine laid down in *C. & N. W. Ry. Co.* v.

*Dunleavy,* 129 Ill. 132, it is sufficient to say, that the refusal to submit these questions could not have worked any harm to the defendant, because they were substantially covered by other questions which were submitted and answered. The finding of the jury already referred to, that plaintiff looked to see if any cars were approaching, answers the question whether he took precautions for his safety. The jury also found, in answer to a question whether plaintiff made any effort to ascertain the approach of the cars, that he "looked both north and south."

It is further objected, that the answer given by the jury to one of the questions was not responsive, and that the court should have required the jury to make another finding, as moved by the defendant. The question thus referred to asked whether there was a flagman on the crossing at the time the plaintiff approached, and at the time of the accident, giving signals. The jury answered: "None visible from the east." The answer was sufficient under the circumstances developed by the evidence. The plaintiff and two other witnesses swore that they saw no flagman. They were on the east side of the tracks and looked towards the west. A witness named Fenton swore, that he was there as flagman at the time of the accident, but was employed by the C. R. I. & P. R. R. Co., who owned the two western tracks. If he was really there, he was west of the place where the accident occurred, and must have been concealed by the passing trains already referred to. It is not shown, that the defendant had a flagman there. The ordinance makes it the duty of the flagman "to signal persons traveling in the direction of any or either of the crossings, and warn them of the approach of any locomotive engine or any impending danger." This flagman not having been visible, and not being in a position where he could warn parties approaching from the east, the situation, so far as the plaintiff was concerned, was the same as though there was no flagman.

It is charged that the first instruction given for the plaintiff was erroneous. This instruction is substantially the same as the first instruction set out in full and commented upon in *C. & A. R. R. Co.* v. *Fietsam,* 123 Ill. 518. It was there held, that the words, "due care," in the first clause of the instruction were intended to be applied to the second clause thereof. The instruction does not *assume,* as claimed by appellant, that the defendant's employes were at fault in negligently operating and running the cars, etc., but requires the jury to believe from the evidence that they were so at fault. This objection, that negligence is assumed, was held to be untenable when made against similar instructions in *L. S. & M. S. R. R. Co.* v. *Brown,* 123 Ill. 162, and *Mullin* v. *Spangenberg,* 112 id. 144. The phraseology of other instructions given for the defendant was such as to prevent the jury from finding the defendant guilty of negligence, unless *they believed from the evidence,* that it was guilty. It is further objected, that the second clause of the instruction allows the jury to find the defendant guilty of negligence generally, without confining them to such negligence as is set up in the declaration. The objection is without force. The first clause contains the following language: "if they believe from the evidence that the plaintiff was injured *in the manner stated in the declaration* through the fault of defendant's employes, etc., *as alleged in the declaration,*" etc. The references here made to the declaration apply as well to the second as the first clause. It was not necessary to repeat these references in the second clause. The two clauses of the instruction are parts of one sentence; a separate conclusion is not announced in each, but one general conclusion is announced at the end of both, which are connected by the conjunction, "or," and together constitute one alternative sentence. It is also said, that the instruction confined the attention of the jury to the question whether or not the plaintiff was in the exercise of due care at the precise moment, or *punctum temporis,* when the cars struck him. This is hypercriticism.

The words, "*at the time*," as used in the instruction, refer to the whole transaction, or series of circumstances, from the time plaintiff reached the tracks to the time when he was injured, leaving it to the jury to determine whether he used due care before he stepped upon the unoccupied track and while he stood there. If this were not so, the defect was cured by several of the defendant's instructions, which required the jury to find that plaintiff was exercising due care both before and at the time of the accident, both while he was on the track and before he went upon it.

The second instruction is objected to because it submits the question to the jury whether the plaintiff was injured by the negligence of the defendant "as charged in the declaration," that is to say, in all the counts of the declaration. The first count charged carelessness in the management of the cars, the second, failure to station a flagman on the crossing, the third, failure of the flagman to signal or give warning, the fourth, violation of the statute in not sounding a bell or whistle eighty rods from the crossing, the fifth, moving at a greater rate of speed than that allowed by the statute and the city ordinance. It is said, that there was no proof to sustain the charge in the fourth count, because the cars which struck plaintiff started from 26th street—one block from the crossing—and did not start at a distance of fully 80 rods from the crossing. In other words, it is claimed, because the statute requires a bell or whistle to be sounded "at the distance of at least 80 rods" from the crossing and to be kept ringing or whistling until the crossing is reached, that a train, which begins to move towards a crossing at a point within 80 rods, or less than 80 rods, therefrom, is not bound to comply with the statute. We think that the command of the statute is applicable, as well when the cars begin to move within the 80 rods, as when the point of starting is fully 80 rods, or more than 80 rods distant. It is also said, that there was no proof to support the second count, because it was not shown that

this particular crossing was in that portion or district of the city where the ordinance required flagmen to be stationed. Appellant is estopped from urging this objection against plaintiff's second instruction, because it asked the court to give, and the court did give at its request, at least two instructions requiring the jury to believe from the evidence, among other things, that there was no flagman on the crossing, and that no signal or warning was given by a flagman, before a verdict could be rendered against the defendant. This was a concession of the point, that the presence of a flagman at this particular crossing was a matter proper to be submitted to the jury for their determination. The fact that the C. R. I. & P. R. R. Co. had a flagman on the west side of the tracks tended to show, that this crossing was within the territory where the ordinance required flagmen to be stationed.

The third instruction given for plaintiff is objected to because it allows the jury, in estimating the damages, to take into consideration "prospective suffering and loss of health." The objection is that there was no evidence upon this subject. We think the proof tends to show, that the wound inflicted by the crushing of the foot which was not amputated, was apt to break out afresh at any time, and that the foot was not in such a condition that it could be used. Plaintiff is obliged to go upon his knees, and use his arms in order to move his body. There was evidence enough to justify the insertion of these words in the instruction.

We discover nothing in defendant's refused instructions which was not embraced in the instructions which were given.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*