62   473
162s  658

## Chicago City Railway Co. v. Stella Dinsmore.

1.   SPECIAL FINDINGS—*Not Necessarily Conclusive.*—The fact that a special finding, if true, would render the general verdict against the preponderance of the evidence, is not binding upon the court as conclusive of such fact.

2.   JURY—*Province of, in Determining Where the Preponderance of Evidence is.*—In determining where the preponderance of the evidence is, a jury may take into consideration, with other facts, the instincts and presumptions which naturally lead men to avoid injury and preserve their own lives.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook-County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

W. J. HYNES and H. H. MARTIN, attorneys for appellant.

FREDERICKSON & CAMP, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was an action by appellee to recover damages for a personal injury.

The declaration consisted of two counts, and in substance they each alleged that on October 28, 1889, appellee was a passenger on one of appellant's cable cars on its State street line, and notified appellant of her desire to get off the car at 44th street, and that it was appellant's duty to hold said car still, while appellee was so getting off, and charged defendant with neglect of said alleged duty; and alleged that, while appellee, using due care, was in the act of leaving the car, said car was, by appellant's negligence, suddenly and without warning started or jerked forward, and was by appellant negligently managed, etc., whereby appellee, while in the act of descending from the car, was thrown forward with force and violence, and was thereby injured.

The declaration was subsequently amended by setting up, as special damages, that appellee was, at the time of the accident, and had been, for eleven years prior thereto, actively engaged in giving lessons and instructions upon the pianoforte and organ as a vocation, and had been, and was at that time, wholly dependent upon the profits and income derived from said vocation as a means of support, and that, at said time, the annual profits and income of said vocation amounted to a large sum of money, the sum of $1,000, and that she would have continued to have received said sum each and every year from the profits and income of said vocation, had it not been for said injuries sustained by her, etc.

There was a conflict in the evidence as to whether the

appellee was in the exercise of due care for her own safety when she attempted to alight from the car; that is to say, whether she stepped from the car to the ground while the car was at a stand, or after it had started up again and was in motion, after having been at a stand at 44th street.

In response to a special interrogatory propounded to the jury, at the request of appellant, as follows:

"Was the car in question in motion when the plaintiff attempted to alight from it?" The jury returned their answer, "No."

There being evidence to support it, the answer to the interrogatory must stand, as establishing the fact, unless there was a clear preponderance of evidence to the contrary. It is not disputed but that the train on which appellee was traveling, consisted of a grip car and one inclosed car, and that the appellee was attempting to alight from the rear platform of the latter car. The appellee was the only witness who testified that the car was at a stand when she attempted to alight from it. Her testimony upon that point was, that while the car was standing still, she took hold of the hand rail attached to the body of the car with her left hand, and from the step put her right foot upon the ground; that, instantly, the car started forward with a jerk; that her right foot rested upon the ground, and her left foot upon the step; that she still held onto the hand rail, and that in some way she fell or sat upon the step, and still holding to the rail, her feet dragged upon the ground until the car was again brought to a stop.

This attitude in which she was left, of sitting upon the step, continuing her hold upon the hand rail and with her feet dragging upon the ground, might well have been considered by the jury as a circumstance strongly corroborating her testimony that the car started while she had but one foot upon the ground, and that the car was not in motion when she placed it there. According to her testimony, she stood facing the grip car, with her right foot upon the ground and her left hand grasping the hand rail, and her left foot on the car step, at the moment the car started up.

A sudden move forward by the car, with appellee standing in that manner, and firmly grasping the hand rail, would, it appears to us, naturally result in the swinging around of her body upon the step, and that such result would not have naturally ensued, if, everything else being the same, the car had been in rapid motion, as appellant's witnesses testify, when appellee's foot first struck the ground; for in this last case the natural result would have been to plunge her in a forward direction and drag her at full length, instead of swinging her around upon the step.

We have examined with care the testimony of appellant's two witnesses on this point of whether the car was in motion, or at a stand, when appellee attempted to step off. One of them, being a passenger who seized hold of her at the time she was falling, testified that he was riding on the same platform of the car from which she attempted to step, and as stated in the abstract:

" I saw the lady get up out of her seat. The car was then in motion and continued in motion up to the time I grabbed her. It was going, I should think, about six or eight miles an hour. I took hold of her arm and kept her from getting off. The lady would have fallen; at least it looked to me that way, because she went to step right off."

The other witness testified that he, also, was on the same platform; that he saw appellee " coming when the car was in motion, and step off the car. I saw her coming out of the car right in the rear doorway, stepping out. The car was then going very fast. It was not on the crossing. It might have been about twenty feet, or something like that. There was a gentleman standing on my right side, and the lady went right to the steps and stepped down, and that gentleman grabbed her."

There is something so inherently improbable in a woman deliberately stepping off a car "going very fast," or " six or eight miles an hour," that we do not wonder the jury believed the appellee in preference to witnesses who so testified.

As was said by our Supreme Court, speaking through

Mr. Justice Wilkin, in Illinois Central R. R. Co. v. Nowicki, 148 Ill. 29 (p. 35), a jury may "take into consideration, with other facts, the instincts and presumptions which naturally lead men to avoid injury and preserve their own lives."

See same case in 46 Ill. App. 566 and C. & E. I. R. R. Co. v. Hines, 132 Ill. 161.

Upon a consideration of the whole case, we can not say that the verdict was against the preponderance of the evidence, giving due regard to what constitutes preponderance.

We find no substantial ground for disturbing the judgment because of the alleged errors in giving some and refusing certain other instructions.

We do not regard as a model for precedent that portion of one of the instructions given for appellee wherein it was said it was sufficient, if appellee were "using such care, skill and prudence as would reasonably be expected from a person of ordinary care, prudence and skill, under similar circumstances."

But we think the jury could not have been misled by it. "Ordinary care is that care which a reasonable, prudent and cautious man would take to avoid injury." C. & A. R. R. Co. v. Adler, 129 Ill. 335; Kammerer v. Gallagher, 58 Ill. App. 561.

Perhaps the degree of care which a prudent man would ordinarily take might be said to be the same as that which he might be reasonably expected to take.

The judgment of $1,000 was reasonable in amount, and we think must be affirmed, and it is so ordered.