# CASES

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—AUGUST TERM, 1901.

## Illinois Central R. R. Co. v. Elmer E. Jernigan, by His Next Friend.

101  1
a198s 297

1. NEGLIGENCE—*Of Railroad Company in Running a Train Backward Without a Lookout.*—A railroad company running its train backward through a public street in the most populous part of a city at a rate of speed in excess of that permitted by the ordinance with no one stationed on the train or premises to give warning of the approach of the train, and detaching the caboose and kicking it back to pass a switch, the other part of the train, following rear end forward, striking and injuring a boy, *it was held* that the railroad company was guilty of negligence.

2. RAILROADS—*Where the Rule Relieving Company from Liability When One Suddenly Comes upon the Track Does Not Apply.*—The rule relieving a railroad company from liability to one who suddenly and unexpectedly comes upon the track and is injured, does not apply where the injured person is a child not capable of exercising any care for its own safety, or where it has exercised such care as might reasonably be expected of one of its age and intelligence under all the circumstances, except where the injuring party is not chargeable with negligence.

3. INSTRUCTIONS—*Referring the Jury to Declaration for the Negligence Charged.*—While it is error in an instruction for the court to refer the jury to the declaration to determine what allegations therein are material, it is not error to refer the jury to the declaration for them to determine whether the evidence proves the allegations and charges therein.

4. SAME—*"For Expenses Incurred in and about Being Healed" Where a Child is Injured.*—Where a child does not live with its parents and they have not undertaken to pay any of the expenses resulting from an injury, and all reasonable inferences would show that the infant's estate is liable for the same, an instruction is proper which authorizes a recov-

(1)

ery " for expenses incurred in and about being healed, if any are shown by the evidence."

5. SAME—*As to the Time When Due Care is Used.*—In instructions referring to the time at which the plaintiff was under duty to exercise due care for his own safety, the words " at the time," as used, refer to the whole transaction or series of circumstances.

**Action on the Case.**—Personal injury. Appeal from the Circuit Court of Jackson County; the Hon. OLIVER A. HARKER, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

WILLIAM H. GREEN, attorney for appellant; J. M. DICKINSON, of counsel.

WILLIAM A. SCHWARTZ and ANDREW S. CALDWELL, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action on the case in the Circuit Court of Jackson County, by appellee against appellant, to recover for a personal injury. Trial by jury. Verdict and judgment in favor of appellee for $4,400.

The declaration consists of three counts. The first charges that appellant was the owner of and used and operated a certain railroad extending through Jackson county, State of Illinois, and entering the city of Murphysboro upon and along one of the public streets of the city, known at the time of the injury complained of as Union street, but at the time of the filing of the declaration herein, known as Thirteenth street, and that said street was a public highway within the corporate limits of said city; that appellant negligently backed an engine and freight train down said street at a dangerous rate of speed—fifteen miles an hour, and violently kicked a caboose forward with such force as to cause it to run by its own momentum a distance of one quarter of a mile, and that the remainder of the train had its speed increased to fifteen miles an hour; that the injured boy, with other children, seeing the caboose detached from the main part of the train and coming toward them, put two crossed pins on the track ahead of the moving caboose

in order that the wheels might flatten them into " scissors; " and after the caboose had passed over the pins, and while the boy was stooping over the rail to pick up the scissors, and while in the exercise of reasonable care, viz., such care for his own safety as should be expected of a child seven years old, he was struck on the head by the end of the car of the backing freight train, being negligently operated by appellant, and knocked down; that the wheels of the car passed over his right foot and right ankle, and right leg, and injured them so that amputation of the right leg became necessary; that he suffered great pain, was permanently injured, and expended about $250 in being cured.

The second count is like the first, and alleges that the street upon which the train was moving was near the center of the city of a population of 6,000, and the train was running at the rate of fifteen miles an hour; that after the caboose was detached the remainder of the train was backed as aforesaid, without any brakeman or other person being on the foremost car of said train; that the train was so backed in violation of the ordinance of the city. The ordinance is pleaded providing that freight trains shall not run within the city limits at a speed of over six miles an hour.

The amended count is the same as the second, and in addition avers that appellant succeeded to the rights, privileges and obligations of the St. Louis Railroad Company, and that by virtue of a certain ordinance numbered 120, of the city of Murphysboro, it is provided among other things that the railroad company should fence both sides of its track within the city limits, and that appellant failed to fence as required by the ordinance, sets out the ordinance, and avers that by reason of the failure to fence, and the excessive rate of speed within the city limits, the boy, while doing the things set forth in other counts, was injured. Also that defendant permitted the right of way to be used and traveled over by the public.

Before any evidence was heard the jury was, by agreement of the parties, sent in charge of an officer to view the premises where the injury occurred.

The contentions relied on for a reversal of this case all pertain to the sufficiency of the evidence as to the disputed questions of fact involved, and to the action of the trial court in the giving of certain instructions on behalf of appellee.

We have carefully read and considered all the evidence. It strongly tends to prove the substance of every material allegation in both the first and second counts of the declaration, and the jury was fully warranted in so finding.

The first proposition of fact contended for by counsel for appellant is that the place where appellee was injured was the property of appellant and that appellee was a trespasser. The evidence proves that the place of the injury was in what is now known as Thirteenth street, one of the most public and frequently traveled streets of the city of Murphysboro, and in the most public and frequently traveled portion of the street, near the center of population of the city, and that the railroad tracks were laid along the street just like street car tracks. Mr. George W. Andrews, the principal witness for appellant as to this question, among other things testified:

"I purchased the forty-foot strip of ground where this accident occurred, for the railroad. I think in the spring of 1883. I am not sure when the street was extended out there north of Hanson street, but I think it was in '94. There was a deep ravine there. Piles were driven in the ground for the track to go over. It could not be traveled before as a street and the railroad had it filled up." "I think it was in '94 that the city council and the railroad company made an agreement that the railroad was to fill in that ravine, and then they got their permission to go over that to use it for their railroad. The record will show. There has never been a street there north of Hanson street in this forty feet up to that time. It had never been platted and made a street."

On cross-examination this witness says:

"There is no particular thing there to show where it begins and ends. It is all street there from the east side of the railroad to the west side of the railroad. In 1894 the different arrangement was made between the city and the railroad company that I spoke of." "It was filled up, and

I. C. R. R. Co. v. Jernigan.

whatever was done, it was made into a street.  I do not know of any ordinance by which it was done.  I know the railroad made a filling and it is my understanding that the railroad allowed them to use it for a passageway."  "The travel on the street has been continued since the fill in '94 or '96.  As far as I know the travel by the public has been kept up, that is, along there where this accident occurred."

In the light of the testimony of this witness and of all the other testimony preceding it on this question, we can not agree with counsel that the trial court should have held, as matter of law, that appellee was a trespasser, and that appellant owed him no duty, except to refrain from willfully and wantonly injuring him.

It is contended that appellee is guilty of contributory negligence.  He was a mere child, less than seven years old, playing on the street, as children of that age are wont to do.  The law only requires of children the exercise of that degree of care and caution for their own safety that may reasonably be expected, under all the circumstances of the particular case; and this, in a case like the one at bar, is always a question of fact for the jury and not a question of law for the court.  The fullest and most satisfactory discussion of this subject we have seen in any Illinois case, is in Chicago Ry. Co. v. Wilcox, 138 Ill. 370.

The next contention is, that appellant was not guilty of negligence; that there was "no negligence on the part of the trainmen."  The train was a freight train consisting of an engine, some eight freight cars and a caboose.  They were entering the most populous part of the city along one of its most public streets, over tracks laid in the street like street car tracks, and were running backward, at a rate of speed in excess of that permitted by the ordinances of the city, with no one stationed on the train or on the premises anywhere to give warning of the train's approach; and in addition to all this, having detached and kicked the caboose, with which were the conductor and brakemen, on ahead to make it pass the switch, while the manned train followed, rear-end forward, leaving an open space of some car lengths between the two sections.  The jury was abun-

dantly warranted in finding that this conduct constituted negligence. In Pennsylvania Co. v. Marshall, 18 Ill. App. 639, the court said:

"The * * * company was guilty of culpable neglect in backing a long train of cars through a busy part of the city, where the people and teams were constantly passing and repassing, without using special precautions either by having a person stationed on the train or on the ground, or in some other practicable way, to give warning of the approach of the train."

And in I. C. R. R. Co. v. Ebbert, 74 Ill. 399, in a case where the train was being "backed" as in the case at bar, the Supreme Court says:

"It was great negligence of the company in failing to have some person on the train on top of the forward car, or upon the ground in front. * * * Had a vigilant man been on the front car, it is not at all probable this accident would have occurred. Indeed, it is quite certain it would not."

Counsel call our attention to the rule that there can be no liability for injury to one who suddenly and unexpectedly comes upon the track of a railroad, so immediately in front of the approaching car that it is impossible to stop the car in time to prevent the injury, and asks us to apply this rule to the facts of this case. This rule does not apply where the injured person is a child not capable of exercising any care for its own safety, or where it has exercised such care as might reasonably be expected of one of its age and intelligence under all the circumstances, except where the injuring party is not chargeable with negligence. To avail of this rule in such case the injuring party must be free from negligence contributing to the injury. To allow appellant to avail of this rule would be to ignore all the antecedent negligence of which it was guilty on the occasion of the injury. And further, proper diligence on the part of the appellant would have seen and observed the actions of this child from the time the caboose approached until the entire train had passed. As was said in I. C. R. R. Co. v. Ebbert, above quoted from, "Had a vigilant man been on the front car (of this backing train), it is not at all probable this acci-

I. C. R. R. Co. v. Jernigan.

dent would have occurred. Indeed, it is quite certain it would not." Such a person in the due discharge of his duties would have seen the child and realized his danger from the first, as did Mrs. Williams and Miss Watts. There would have been in such case plenty of time to stop the train and save the child. The rule relieving a railroad company from liability to one who suddenly and unexpectedly comes upon the railroad track and is injured, has no application to the facts of this case.

The court gave the jury, on behalf of appellee, the following instructions:

"1.   In this case, if you believe from the weight of the evidence that the defendant was guilty of the negligence charged in the declaration, and that such negligence was the proximate cause of the plaintiff's injuries, then you shall find the defendant guilty, provided you further believe from the evidence that the plaintiff, at the time of the injury, was in the exercise of reasonable care for his own safety.

"2.   The question of negligence is a question of fact for the jury to determine after considering all the evidence before them; and in this case, if the jury believe from the weight of the evidence that the defendant was guilty of the negligence charged in the declaration, or in either count thereof, and that Elmer E. Jernigan, the plaintiff, received the injuries complained of by reason of the negligence charged in the declaration, or in either count thereof, and while he, the plaintiff, was exercising such care and caution for his own safety as might reasonably be expected of a child of his age and intelligence under all the circumstances of the case as shown by the evidence, then you can find the defendant guilty.

"3.   Whether the defendant was guilty of negligence as charged in the declaration, or in either count thereof, is a question of fact to be determined by the jury from the evidence in the case. And it is also a question for the jury to determine from the evidence in the case whether the plaintiff was, at the time of the injury complained of, exercising such care for his own safety, as could reasonably be expected from a child of his tender years, and of his intelligence or want of intelligence, and capacity, as shown by the evidence.

"4.   If you believe from the weight of the evidence that

the plaintiff was a child under seven years of age at the time of the injury complained of, then in determining whether he was in the exercise of proper care for his own safety, it is your duty to take into consideration his tender years, his intelligence, or want of intelligence, his capacity and discretion, as shown by the evidence, and all the other facts and circumstances in proof.

"5. If the jury believe and find from the weight of the evidence that the defendant was guilty of negligence as charged in the declaration, and that such negligence was the proximate cause of the plaintiff's injuries, and that the plaintiff was, at the time of receiving such injuries, in the exercise of reasonable care for his own safety, then the defendant is liable, and in assessing plaintiff's damages, you have a right to take into consideration the character and extent of the injuries he has sustained, if any are proven by the evidence, the pain and suffering endured, if any is proven, the expenses incurred in and about being healed, if any are shown by the evidence, the permanent character of his injuries, if the evidence shows the plaintiff to be permanently injured and crippled, and you should give him such sum as damages as you believe from the weight of the evidence to be fair and just compensation for such injuries, not exceeding the amount named in the declaration."

Counsel insist that each of these instructions contains manifest error—such error as calls for a reversal of this case. It is said that each of the first three improperly refer to the declaration for the negligence of which appellant is accused, and that the second and third not only refer to the declaration but to either count thereof, and that this is error, and especially so as there is no evidence tending to prove the amended or third count of the declaration. As to the amended or third count, there is nothing in the record to show that it was before the jury. It appears to have been abandoned. Appellee's counsel say a demurrer was sustained to it at the January term, 1901, before the first trial. Appellant's abstract says, " Demurrer to amended count," but does not state whether sustained or overruled by the court, nor have we been able to find from the record what disposition was made of this demurrer. However this may be, it is, we think, not a matter of much importance.

These instructions do not refer the jury to the declaration for the jury to determine the "material" allegations of the declaration, or for them to determine whether the "material" allegations of the declaration are proven. It is true that the court should determine what allegations of a declaration are material, and it has often been held to be error to refer a jury to the declaration for the jury to determine whether the "material" allegations of the declaration are proven, without also instructing them as to what allegations in the particular declaration are material; but the instructions in this case do not contain this vice. They direct the jury to the declaration for the negligence charged, which plaintiff is required to prove to warrant a recovery. Such instructions are given in almost every case where the suit is based on a charge of negligence, and so far as we are advised have never been condemned by our courts. We cite a few comparatively recent cases as representative of them all. City of La Salle v. Kostka, 190 Ill. 130; Mt. Olive Coal Co. v. Rademacker, 190 Ill. 538; Chicago City Ry. Co. v. Hastings, 136 Ill. 251; C. & A. Ry. Co. v. Sanders, 154 Ill. 531; L. S. & M. S. Ry. Co. v. Hessions, 150 Ill. 546. In C. & A. Ry. Co. v. Sanders, 154 Ill. 531 (533), the instruction was:

"The court instructs the jury that if they believe from the evidence that the plaintiff, while in the exercise of ordinary care and caution for his own safety, was injured by or in consequence of the negligence of the defendant, as charged in the declaration or in either one of the counts thereof, then you will find the defendant guilty."

And in L. S. & M. S. Ry. Co. v. Hessions, 150 Ill. 546 (554), the instruction was:

"The court instructs the jury that if they believe from the evidence that the plaintiff's intestate, while exercising ordinary care to avoid injury, was killed by the negligence of defendant as charged in the declaration, then you can find for the plaintiff."

The above quoted instructions refer to the declaration exactly the same, and for exactly the same purpose, as do the instructions of appellee in the case at bar. These

instructions are fully sustained, not only in the cases above cited and quoted from, but in others too numerous to cite. In commenting upon this feature of the instruction quoted from the case in 150 Ill., the court says:

"It is objected that thereby the jury were left to consider the case as charged in the declaration, while there was no evidence before the jury to prove the negligence alleged in one or more of the counts thereof. It is hardly to be supposed that the jury would understand the instruction to authorize them to consider negligence charged in the counts of the declaration, not proved. They were to believe, from the evidence, that the intestate was killed by the negligence of the defendant as charged.    *    *    *"

So it is of no consequence whether the amended or third count shall be considered in or out of the record. Its presence would not make the instruction erroneous, for it is not to be supposed that the jury in the case at bar would understand the instruction to authorize them to consider negligence charged in a count of the declaration which there was no evidence tending to prove.

It is also suggested that the second and third of these instructions assume that appellee was exercising care for his own safety. This objection is also urged against the fourth, and that the fourth assumes that a child under seven years of age is not in any case required to exercise any degree of care for its own safety. We do not so understand these instructions, and we think they were not and could not have been so understood by the jury. They are based upon the evidence and state the law with substantial accuracy. A fair and unprejudiced reading of them is sufficient answer to these criticisms.

The fifth instruction is as to the measure of damages and authorizes a recovery "for expenses incurred in and about being healed, if any are shown by the evidence." This appellant's counsel urge as error, and cite us to C. & A. R. R. Co. v. Lammert, 12 Ill. App. 408 (413). In the case cited the child resided with his mother, was wholly supported by her, and she had actually paid all the expenses incurred in and about the healing of her child. In the case at bar

I. C. R. R. Co. v. Jernigan.

the child had never resided with its parents.  Nothing is known as to their whereabouts or responsibility.  They had neither undertaken to nor paid any of these expenses. Neither had the grandfather nor grandmother with whom the child lived promised to pay or paid any part of them. The only evidence as to expense disclosed by the abstract is in the testimony of Dr. Ingram, one of the physicians who treated appellee at the hospital.  He says :

" His condition was so serious that I thought it necessary to amputate his limb to save his life, and he being a child, we got authority to amputate from his grandfather and grandmother.  I gave him service till he left the hospital and then till the 15th of June.  I charged $58 and Dr. Ormsby charged $20.  That does not include the hospital charge, which was $65."

These expenses were for necessaries, for which, under the facts disclosed in the record, with the reasonable inferences deducible therefrom, this infant's estate is liable to the parties who furnished the same.  Appellee has by implication of law incurred this liability for expense in and about being healed, and ought to recover for it.  It goes without saying that if appellant is liable at all for the injuries to this child which made these expenses necessary, that the expenses are a part of its liability to some one.  This record discloses such state of facts as to make it certain that if appellant shall be required to pay the judgment as rendered by the Circuit Court, it will be fully protected from any liability to pay these expenses over again, either to appellee or to any one else, and this is all the interest appellant can have in that question.

Lastly it is contended that these instructions are not sufficiently comprehensive as to the time that appellee was under duty to exercise care for his own safety.  Counsel say they limit the time to the instant of the injury.  What we said on this question in National Stock Yards v. Godfrey, opinion filed at the present term, is in all respects applicable to the case at bar.

" It is only in a case where there is something to indicate that the jury was misled by the form of statement, i. e.,

something in the facts of the particular case to warrant the conclusion that the jury understood the expression used to comprehend only the immediate time of receiving the injury, that either of the forms of expressing the time, employed in the instructions, can be held to be not sufficiently comprehensive."

It is not ordinarily so. Has not, so far as we are advised, been so held in any of the later cases in either the Appellate or Supreme Court, but the contrary has been uniformly held in recent years. Among the cases so holding are C. & A. R. R. Co. v. Fisher, 141 Ill. 614; there the phrase was identical with one of those before us, and the same argument was put up against it. The court said:

" The word 'while' means 'during the time that' and seems to necessarily imply some degree of continuance. The jury could not reasonably have regarded it otherwise than as referring to the whole series of circumstances involved in the transaction."

To the same effect are L. S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 641; McNulta v. Lockridge, 137 Ill. 270; L. S. & M. S. Ry. Co. v. Ouska, 151 Ill. 232; C., C., C. & St. L. Ry. Co. v. Keenan, 190 Ill. 217. The language in these cases is " at the time of the injury." The same language as in C., M. & St. P. Ry. Co. v. Halsey, 133 Ill. 248, relied on by counsel for appellant. The court in these respective cases says:

" The words 'at the time' as used in these instructions, refer to the whole transaction, or series of circumstances. The jury could not reasonably have understood the instruction otherwise than as referring to the occasion * * * to the whole transaction. The words 'at the time of the injury' * * * have reference to the whole transaction and all that occurred. * * * The phrase 'at the time' * * * as used in these instructions, refers to the conduct of plaintiff's intestate while approaching the railroad as well as while attempting to cross the same."

Appellee's case is well supported by evidence and there is no material error in the record.

The judgment of the Circuit Court is affirmed.